UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

          Plaintiff,

v.

JAMES FUNARO

          Defendant.
_____/

No. 1:22-cr-00029-RJJ

Hon. ROBERT J. JONKER
U.S. District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between JAMES FUNARO and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1. **Defendant Agrees to Plead Guilty.** Defendant agrees to plead guilty to Count 2 of the Indictment. Count 2 charges Defendant with conspiracy to launder money, in violation of Title 18, United States Code, Sections 1956(h), 1956(a)(1)(A)(i), and 1956(a)(1)(B)(i).

2. **Defendant Understands the Crime.** In order for Defendant to be guilty of conspiracy to launder money, in violation of Title 18, United States Code, Section 1956(h) the following must be true:

- Defendant entered into an agreement with one or more individuals to violate the money laundering laws; and
- Defendant intended to accomplish the object of the conspiracy.

The elements of money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), and 1956(a)(1)(B)(i) are as follows:

- First, Defendant conducted or attempted to conduct a financial transaction;

- Second, that the financial transaction involved property that represented the proceeds of smuggling goods into the United States;[1]

- Third, Defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

- Fourth, Defendant had the intent to either promote the carrying on of the crime of smuggling goods into the United States and/or knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, control, of the proceeds of the crime of smuggling goods into the United States.

Defendant is pleading guilty because Defendant is guilty of the charge described above.

3. **Defendant Understands the Penalty.** The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Sections 1956(h), 1956(a)(1)(A)(i), and 1956(a)(1)(B)(i), is the following: 20 years of imprisonment; a 3-year period of supervised release; a fine of $500,000, or twice the value of the property or funds involved in the transaction, whichever is greater; and a mandatory special assessment of $100. Defendant agrees to pay the special assessment at or before the time of sentencing unless Defendant affirmatively demonstrates to the Court that Defendant lacks the ability to pay.

4. **Supervised Release Defined.** Supervised release is a period of time following imprisonment during which Defendant will be subject to various

---

[1] Smuggling goods into the United States, in violation of 18 U.S.C. § 545, is a specified unlawful activity for purposes of the money laundering statutes. *See* 18 U.S.C. § 1956(c)(7)(D).

restrictions and requirements. Defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in the Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

5. <u>Asset Forfeiture and Financial Accountability.</u>  Defendant agrees to disclose to law enforcement officials the whereabouts of, the Defendant's ownership interest in, and all other information known to Defendant about, all assets, money or property of any kind, derived from or acquired as a result of, or used to facilitate the commission of Defendant's illegal activities. Defendant further agrees to forfeit all rights, title, and interest in and to such items.

Defendant agrees to fully cooperate with the federal government in the seizure and forfeiture of assets pursuant to Title 18, United States Code, Section 982(a)(1), regarding any property, real or personal, involved in the money laundering offense, and any property traceable to such property.

Defendant admits that $1,394,645.50 was involved in the money laundering conspiracy to which he is pleading guilty. Defendant consents to the entry of a forfeiture money judgment against himself in the amount of $1,394,645.50 and admits that this sum is forfeitable pursuant to 18 U.S.C. § 982(a)(1) because it represents property involved in the offense or any property traceable to such property. Defendant consents to the entry of a forfeiture money judgment at or before the time of sentencing.

Defendant consents to the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). Defendant acknowledges that the money involved in the offense cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; and/or has been commingled with other property which cannot be divided without difficulty.

Defendant agrees to assist and cooperate in the recovery of all monies, property, or assets involved in, derived from, or acquired as a result of the offense charged in Count 2 of the Indictment, including executing and delivering to the U.S. Attorney's Office a completed financial statement in a format supplied by the U.S. Attorney's Office that truthfully and completely discloses Defendant's assets, including any such assets held by third parties.

Defendant agrees not to assist any other individual in contesting the forfeiture of the assets described in the Forfeiture Allegation of the Indictment and agrees that there was reasonable cause to seize such items. Defendant also agrees to prevent the disbursement of any and all assets described above if said disbursements are within Defendant's direct or indirect control.

Finally, Defendant agrees not to make any double jeopardy challenge to any administrative or civil forfeiture actions arising out of the course of conduct that provides the factual basis for the Indictment. Defendant further agrees not to make any double jeopardy challenge to the charges in Indictment or to the imposition of a sentence for the offenses covered by this plea agreement, based upon any pending or completed administrative or civil forfeiture actions. Defendant further agrees that

forfeiture of assets described above shall not be counted toward satisfaction of any special assessment, fine, restitution, or any other penalty the Court may impose.

6.  **Factual Basis of Guilt.** Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

Beginning in or about 2018 and continuing until in or about October 2021, several individuals ran a website – www.ExpressPCT.com – that sold misbranded prescription drugs as well as some Schedule III and Schedule IV controlled substances in the United States without requiring a prescription. The drugs were manufactured overseas and then shipped in bulk to the United States to domestic re-distributors. The packages did not declare their illicit contents and instead took steps to conceal their true nature. Once the packages arrived in the United States, the re-distributors sent the bulk orders to second tier US-based distributors who then finally shipped the drugs to the customers, making the purchasers think their drugs came from the United States and not from overseas. Two of the re-distributors who received both bulk packages from overseas and ultimately sent drugs to customers living in Muskegon, Michigan, and several of the drug packages linked to the website were sent to the Western District of Michigan.

When customers made a purchase on www.ExpressPCT.com, they had a number of payment options, including cryptocurrency (Bitcoin and others), credit card, or digital payment networks like Zelle and CashApp. Defendant worked with others, including co-defendant Brendan Gagne, to route non-cryptocurrency

payments through a series of accounts in an effort to conceal the source of the funds. Defendant did so using a website that he owned, www.PayAnyWayExchange.com, through which he facilitated payment for drugs using Cash App, Zelle, and eCheck, as well as other non-cryptocurrency payment methods. Defendant also owned Valiant Capital Partners LLC, registered in the State of New York. Defendant frequently moved proceeds of the drug smuggling scheme through the business accounts of Valiant Capital Partners LLC before routing the funds to personal accounts in his name. Defendant also used mobile payment services (e.g., Cash App), to receive and transfer proceeds from the sale of misbranded prescription drugs on www.ExpressPCT.com. Defendant ultimately moved the funds to a cryptocurrency exchange account in his name, where he converted the funds to Bitcoin and sent them to others, including co-defendant Brendan Gagne as well as co-conspirators, overseas.

For example, in or about Fall 2020, M.W., who was at the time a resident of Lansing, Michigan, made purchases on www.ExpressPCT.com. At least one of the orders was ultimately fulfilled by re-distributors based in Muskegon, Michigan. To pay for the orders, M.W. learned through www.PayAnyWayExchange.com that he could send the money using Skrill, a digital payment processor. M.W. then sent the money via Skrill, citing valiantcapitalone@gmail.com as the recipient – an email address linked to Defendant and Defendant's company, Valiant Capital LLC. Defendant later routed the funds to a personal account he maintained at J.P. Morgan Chase.

Once converted to cryptocurrency, the proceeds of the drug smuggling were used for a variety of purposes, including paying re-distributors of drugs living in Muskegon, Michigan. Defendant also sent some of the funds to various pharmaceutical companies in India in order to purchase additional drugs and thus continue the scheme.

7.  <u>Cooperation in Criminal Investigations</u>. Defendant agrees to fully cooperate with the United States Postal Inspection Service, the Food and Drug Administration, the Michigan State Police, and the U.S. Attorney's Office, as well as any other law enforcement agency in their investigation of the charges contained in the Indictment, as well as the investigation of crimes over which they have actual or apparent jurisdiction. Defendant's cooperation will consist of all steps needed to uncover and prosecute such crimes, including, but not limited to, providing investigators with a full, complete and truthful statement concerning Defendant's knowledge of any and all criminal activity of which he is aware; truthfully answering investigators' questions; meeting with prosecutors before testifying; truthfully testifying before grand juries and in any court proceedings; and providing all relevant tangible evidence in Defendant's possession or under Defendant's control, including, but not limited to, objects, documents, and photographs. Defendant's obligation to cooperate under this paragraph is an affirmative one and includes the obligation to voluntarily come forward with any and all information which Defendant should reasonably know will assist in the investigation of other criminal activity. Defendant will not commit any criminal offense during the course of his cooperation with the

United States. Defendant will submit to polygraph examination(s) upon request. Defendant's obligation under this paragraph is a continuing one, and shall continue after sentencing until all investigations and prosecutions in which Defendant's cooperation is deemed relevant by the U.S. Attorney's Office have been completed.

8. <u>Dismissal of Other Counts/Charges</u>. The U.S. Attorney's Office agrees to move to dismiss Counts 1 and 3 of the Indictment against Defendant at the time of sentencing. Defendant agrees, however, that in determining the sentence the Court may consider the dismissed counts in determining the applicable Sentencing Guidelines range, where the sentence should fall within the applicable Guidelines range, and the propriety of any departure from the calculated guidelines range. By this agreement, Defendant does not concede that an increased sentence or an upward departure is, in fact, warranted.

9. <u>Acceptance of Responsibility</u>. The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

10. <u>Protection for the Proffered/Cooperative Statements</u>. The U.S. Attorney's Office agrees that information provided by Defendant through Defendant's proffer(s), and any information provided pursuant to Defendant's promise to cooperate as described in this agreement, will not be used by the Government to enhance Defendant's sentence, in accordance with Sentencing Guidelines § 1B1.8, and according to the terms of the written agreement entered into between the parties immediately prior to the proffer(s). It is expressly understood, however, that such information may be used by the Government at sentencing if Defendant takes a position at sentencing that contradicts information provided by Defendant pursuant to this agreement or any proffer agreement.

11. <u>Prison Placement</u>. The U.S. Attorney's Office will not object to a request by Defendant that the Court recommend that Defendant be confined at any particular institution. Both parties acknowledge that the Bureau of Prisons, in its sole discretion, decides prison placement and that, while the Bureau often gives deference to a Court's recommendation, the Bureau is not required to follow the Court's recommendation.

12. <u>Possibility of Sentence Reduction Motions</u>. The U.S. Attorney's Office will decide whether to file a motion for departure or reduction of sentence pursuant to Sentencing Guidelines § 5K1.1 and/or Rule 35(b) of the Federal Rules of Criminal Procedure. Defendant fully understands that such a motion may be made pursuant to law if, and only if, Defendant fully cooperates with the Government and materially and substantially assists the Government in the investigation or

9

prosecution of others. The determinations of whether Defendant has provided substantial assistance to the United States, or to designated state or local law enforcement authorities, will be made in the sole discretion of the U.S. Attorney's Office. Defendant fully understands that this paragraph is not a promise by the Government to file a motion for departure or to reduce a sentence. Additionally, Defendant understands that, even if such a motion were filed, the Court has complete discretion to grant or deny the motion. Furthermore, if the Court were to grant the motion, the Court, not the Government, would decide how much of a sentence reduction Defendant receives based upon the nature and extent of Defendant's assistance. Defendant acknowledges and agrees that Defendant may not appeal the Court's exercise of its discretion in granting or denying a motion for departure or reduction of sentence, if such a motion is made.

13. <u>The Sentencing Guidelines</u>. Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant. Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within,

above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement. Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

14. Guideline Agreements. The parties do not have any stipulations as to the Guidelines that should be applied in this matter. However, Defendant and the U.S. Attorney's Office each reserve the right to argue that certain specific offense characteristics, adjustments, and departures are appropriate.

a. No Further Agreement About the Final Sentencing Guidelines Range. Defendant and the U.S. Attorney's Office have no other agreements as to the applicable Sentencing Guidelines factors or the appropriate Guideline range. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments and departures.

b. Stipulations Not Binding in Court. The Defendant understands that neither the United States Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing. Both the Defendant and the U.S. Attorney's Office are free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any and all factual misstatements relating to the calculation of the sentence. Defendant understands that if the Court

11

finds facts or reaches conclusions different from those in any stipulation contained in this agreement, Defendant cannot, for that reason alone, withdraw his guilty plea.

15. **Waiver of Constitutional Rights.** By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of Defendant's guilty plea, there will be no trial. At any trial, whether by jury or by the Court, Defendant would have had the following rights:

a. The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

c. The right to confront and cross-examine witnesses against Defendant.

d. The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e. The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

f. By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or

Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

16. Waiver of Other Rights.

a. Waiver. In exchange for the promises made by the government in entering this plea agreement, Defendant waives all rights to appeal or collaterally attack Defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

b. Exceptions. Defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

i. Defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

ii. Defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

iii. the guilty plea was involuntary or unknowing;

iv. an attorney who represented Defendant during the course of this criminal case provided ineffective assistance of counsel.

If Defendant appeals or seeks collateral relief, Defendant may not present any issue in the proceeding other than those described in this subparagraph.

17. FOIA Requests. Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this

case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. <u>The Court is not a Party to this Agreement</u>. Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all of his obligations under this agreement. Defendant understands that no one—not the prosecutor, Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

19. <u>This Agreement is Limited to the Parties</u>. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by Defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

20. <u>Consequences of Breach</u>. If Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement,

14

the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed.  In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

21. **This is the Complete Agreement.**  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.  No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

22. **Deadline for Acceptance of Agreement.**  If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by **7/29/2022**, this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

MARK A. TOTTEN
United States Attorney

7/29/2022
Date

*[signature]*

STEPHANIE M. CAROWAN
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

7/26/22
Date

_____
JAMES FUNARO
Defendant

I am JAMES FUNARO's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

7/28/22
Date

_____
DANIEL FAGAN
Attorney for Defendant

16